UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

Calibrate Networks LLC,

                Plaintiff,

vs.

Lee Hecht Harrison LLC,

                Defendant.

Case No. 2:25-cv-1075

Patent Case

---

## DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR PATENT INFRINGMENT

---

Defendant Lee Hecht Harrison LLC ("LHH"), improperly named herein, the correct entity being LHH Recruitment Solutions, Inc., respectfully moves to dismiss Plaintiff Calibrate Networks LLC's ("Calibrate") First Amended Complaint for Patent Infringement ("FAC") (Dkt. 13) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiff was given a clear roadmap of the pleading defects in its original complaint through LHH's prior motion to dismiss (Dkt. 9). Rather than curing those defects, Plaintiff filed an amended pleading that makes no substantive changes, adds no new factual allegations identifying any accused LHH product or system, and continues to rely on the same legally deficient theory that staffing activity and job postings constitute patent infringement. Because the FAC fails for the same reasons as the original complaint, dismissal remains warranted and should be with prejudice.

## I.     INTRODUCTION

This lawsuit remains premised entirely on a fundamental misunderstanding of LHH's business and conduct. LHH is a staffing and talent-placement agency. In its original motion to dismiss, LHH explained that Plaintiff's infringement theory rested solely on the legally

untenable proposition that a staffing firm infringes a patent by posting job descriptions on behalf of its clients. Rather than responding to that motion or addressing those defects, Plaintiff filed a FAC (Dkt. 13). The amended pleading, however, makes no substantive changes and does not cure the deficiencies identified by LHH.

As before, Plaintiff's theory is that LHH infringes the '633 Patent because it posted job descriptions on its website for positions at third-party client companies. Those job descriptions referenced Kubernetes as a skill requirement for software engineering roles at the client's organization. Plaintiff's leap from listing a skill requirement to concluding that LHH itself necessarily uses or operates Kubernetes and therefore practices the claimed invention remains unsupported by factual allegations and implausible on its face. The FAC merely doubles down on this same defective theory.

Critically, the FAC still does not identify any LHH product, service, system, or technology that could plausibly infringe the '633 Patent. It does not allege that LHH uses Kubernetes, operates containerized applications, or performs any of the claimed method steps. It does not allege that LHH sells, offers to sell, or imports any accused technology. Instead, as before, Plaintiff relies on job postings written for third-party employers and an expanded claim chart that maps the general functionality of Kubernetes, rather than any LHH system, to the asserted patent claims. A job advertisement and staffing activity are not acts of patent infringement under any theory recognized by 35 U.S.C. § 271.

Because the FAC fails for the same reasons as the original complaint, dismissal is required. And because Plaintiff was given notice of these defects and failed to cure them, dismissal should be with prejudice. LHH does not engage in any conduct that could plausibly be alleged to infringe the asserted patent, and Plaintiff's amendment confirms that it cannot plead otherwise.

## II.    ISSUES TO BE DECIDED BY THE COURT

1.  Whether Plaintiff plausibly alleges direct infringement of the '633 Patent based on LHH's posting of a job description for its client.

2.  Whether Plaintiff plausibly alleges viable claims of indirect and willful infringement.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must plead facts that plausibly state a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In patent cases, a plaintiff must allege facts showing how the defendant's accused product or conduct practices each limitation of at least one asserted claim. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352–53 (Fed. Cir. 2021). Conclusory allegations, labels, and speculation are insufficient, particularly where the plaintiff fails to identify any accused instrumentality.

When a plaintiff amends after a motion to dismiss but fails to cure the identified defects, dismissal is especially appropriate. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

"To state a viable direct infringement claim, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim or claims." *Encoditech, LLC v. Citizen Watch Co. of Am., Inc.,* No. SA-18-CV-1335-XR, 2019 WL 2601347, at *3 (W.D. Tex. June 25, 2019). "The adequacy of the facts pleaded depends on the breadth and complexity of both the asserted patent and the accused product or system and the nature of the defendant's business activities." *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013). Under any standard, "the complaint must support its entitlement to relief with 'factual content,' not just conclusory allegations that the accused product(s) meet every claim limitation." *Vervain, LLC v. Micron Tech., Inc.,* No. 6:21-cv-00487-

ADA, 2022 WL 23469, at *2 (W.D. Tex. Jan. 3, 2022) (quoting *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021)).

A plaintiff may fail to plausibly state a claim where (1) the infringement allegation rests on an implausible claim construction, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141–42 (Fed. Cir. 2018), or (2) the factual allegations are actually inconsistent with and contradict infringement. *Bot M8 LLC*, 4 F.4th at 1354.

A claim for willful infringement requires plausible allegations that the accused infringer knew of the asserted patent and intentionally or knowingly acted despite the known risk of infringement. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 105 (2016). Likewise, both induced and contributory infringement claims require plausible allegations that the accused infringer knew of the asserted patent and that the accused acts constituted infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639-40 (2015).

## IV.    ARGUMENT

### 1..    PLAINTIFF MADE NO SUBSTANTIVE CHANGES IN THE FAC

The FAC is substantively the same as the original complaint. *See* Ex. 1, for reference purposes only. Plaintiff did not add factual allegations identifying any accused LHH product, system, or internal technology. Plaintiff did not allege that LHH runs Kubernetes clusters, deploys containerized applications, or operates any cloud-native infrastructure. Plaintiff did not plead facts explaining how LHH performs any step of any asserted claim.

Instead, Plaintiff expanded Exhibit 2, added additional links and screenshots, and re-asserted the same conclusory allegations that were already challenged. Lengthening a pleading without adding facts does not cure a Rule 12 defect.

2.     PLAINTIFF'S DIRECT INFRINGEMENT CLAIM REMAINS INADEQUATELY PLED

The FAC still fails to allege facts showing that LHH performs any limitation of any asserted claim. Plaintiff's allegations remain generic recitations of statutory language, unsupported by factual allegations tied to LHH conduct. Without identifying an accused system or explaining how LHH practices the claims, Plaintiff has not plausibly alleged direct infringement.

The most fundamental defect in the original complaint was Plaintiff's failure to identify any accused LHH product or system. That defect remains. The FAC continues to refer to "Exemplary Defendant Products" without identifying what those products are. Dkt. 13, FAC ¶ 11. Plaintiff does not describe any LHH-owned or LHH-operated software, platform, or system. The FAC still does not allege that LHH uses Kubernetes at all. Instead, the pleading relies on job postings, third-party documentation, and general descriptions of Kubernetes functionality untethered to any LHH conduct.  Under *Bot M8*, a plaintiff must allege what the accused instrumentality is and how it works. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th at 1355 (mere recitation of claim elements and corresponding conclusions, without supporting factual allegations, is insufficient to satisfy the *Iqbal/Twombly* standard). Plaintiff's continued failure to do so is fatal.

The Eastern District of Texas has made clear that a patent infringement complaint must be dismissed where the plaintiff's theory assumes the defendant makes or uses an accused product or system, but the complaint pleads no facts plausibly tying the defendant to that accused instrumentality. In *Ruby Sands LLC v. American National Bank of Texas*, No. 2:19-cv-00156-JRG, 2020 WL 2064069 (E.D. Tex. Apr. 29, 2020), Judge Gilstrap dismissed a patent infringement complaint under Rule 12(b)(6) for precisely that reason.

In *Ruby Sands*, the asserted claims required specific hardware components, including an "image transfer device," a "reader," and a "display." *Id.* at *1–2. The plaintiff's theory depended on the assumption that the defendant bank infringed because the claims could allegedly be satisfied by mobile devices used in banking transactions. *Id.* at *3. The Court rejected this theory, holding that the complaint "plainly fails to state a claim for relief that is plausible on its face" because it contained no factual allegations suggesting that the defendant bank "makes, uses, offers to sell, or sells mobile devices." *Id.* at *4. The Court emphasized that merely reciting statutory infringement language is insufficient; although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the absence of such allegations rendered the plaintiff's theory "fatally flawed." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Notably, the *Ruby Sands* court refused to draw speculative inferences about the defendant's conduct based on the plaintiff's assumptions about the defendant's business. The Court explained that it "cannot make a plausible inference of direct infringement" where the complaint relies on "labels and conclusions" rather than factual allegations showing that the defendant actually engages in the conduct required by the asserted claims. *Id.* at *5. Because the complaint failed to plead facts showing that the defendant was the entity that made or used the accused components, dismissal was required at the pleading stage. *Id.*

That reasoning applies here. As in *Ruby Sands*, Plaintiff's FAC depends on an assumption about Defendant's business that is unsupported by factual allegations identifying an accused LHH product or system. Plaintiff's claim charts and narrative repeatedly describe Kubernetes generally, but the FAC still does not identify any LHH-owned or LHH-operated Kubernetes cluster, container platform, or cloud-native system that LHH allegedly "makes, uses, offers to sell, or sells." Instead, Plaintiff infers infringement from job postings and third-

party materials, asserting that because job descriptions reference Kubernetes as a skill requirement, LHH must necessarily operate Kubernetes infrastructure. *Ruby Sands* rejects precisely this form of pleading-by-assumption. A plaintiff must allege facts that "even remotely suggest" that the defendant engages in the conduct the infringement theory requires; speculation about what a defendant "must" do is not enough. *Id.* at *4.

The parallel is even stronger here because LHH's business is staffing and talent placement, not software development, cloud services, or container orchestration. In *Ruby Sands*, the Court found it implausible to infer that a bank was the entity that "makes, uses, offers to sell, or sells" the mobile devices the plaintiff claimed were necessary to satisfy the patent claims. *Id.* at *4–5. Likewise, absent concrete factual allegations, it is implausible to infer that a staffing agency operates, controls, and puts into service the Kubernetes-based systems Plaintiff's claim charts describe. As in *Ruby Sands*, Plaintiff's FAC rests on a "fatally flawed foundation": it recites infringement verbs and incorporates generalized technical descriptions but fails to plead facts identifying any accused LHH product or system or showing that LHH undertook any act of infringement under 35 U.S.C. § 271(a). *Id.* at *4.

Finally, *Ruby Sands* underscores why dismissal is particularly appropriate where, as here, the plaintiff proceeds without identifying an accused instrumentality despite public information about the defendant's business model. The Court, in *Ruby* Sands, noted that the deficiencies in the complaint raised concerns about whether the plaintiff had conducted a meaningful pre-suit investigation before filing suit. *Id.* at *5. That concern is present here, where Plaintiff continues to rely on public job postings and generalized internet material about Kubernetes rather than facts showing that LHH itself makes or uses any accused system. *Ruby Sands* confirms that Rule 12(b)(6) exists to prevent exactly this scenario of forcing a defendant into discovery when the complaint does not plausibly allege that the defendant is

the entity responsible for the alleged infringement. Hiring criteria and recruiting activity are not acts of making, using, selling, or offering to sell a patented invention under 35 U.S.C. § 271(a). Plaintiff's theory, thus, fails as a matter of law.

### 3.   PLAINTIFF STILL FAILS TO STATE A CLAIM FOR WILLFUL INFRINGEMENT

A plaintiff alleging willful patent infringement must plead facts plausibly showing that the accused infringer: "(1) knew of the patent-in-suit; (2) after acquiring that knowledge, infringed the patent; and (3) in doing so, knew, or should have known, that its conduct amounted to infringement of the patent." *Parity Networks, LLC v. Cisco Sys., Inc.,* No. 6:19-CV-00207-ADA, 2019 WL 3940952, at *3 (W.D. Tex. July 26, 2019). Notably, mere knowledge of the asserted patents is not enough to establish knowledge of infringement. S*ee Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–04 (2016) (willfulness requires culpable conduct beyond ordinary infringement).

The FAC does not meet this standard. As in the original complaint, Plaintiff alleges that LHH's "actual knowledge" of the '633 Patent arises solely from service of the original complaint. Dkt. 13, FAC ¶ 13. Plaintiff alleges no pre-suit notice, no licensing discussions, no cease-and-desist communications, and no facts suggesting that LHH had any awareness before or after suit that its conduct allegedly infringed the patent. Alleging post-suit knowledge alone does not plausibly establish that LHH knew, or should have known, that its conduct constituted infringement.

The FAC then attempts to bootstrap willfulness by alleging that LHH "continues to sell Defendant's Exemplary Products" and "distribute product literature and website materials" that induce infringement. Dkt. 13, FAC ¶ 14. But, as with Plaintiff's inducement theory, these allegations are conclusory and unsupported by facts. The FAC does not define what the so-called "Defendant's Exemplary Products" are, does not allege that LHH sells any product at

all, and does not identify any product literature or website materials that instruct or encourage infringing use. As explained above, LHH is a staffing and talent-placement agency; it does not develop, sell, license, or distribute software products. Plaintiff's own Exhibit 2 (Dkt. 13-2) confirms this defect as it consists entirely of job postings for third-party client positions and generalized descriptions of Kubernetes, not any LHH product or marketing materials.

Plaintiff pleads no facts showing that LHH knew, or should have known, that its alleged conduct of posting job descriptions on behalf of a client amounted to patent infringement. Plaintiff's willfulness claim thus rests on the legally untenable premise that a staffing agency's routine recruiting activity could constitute infringement in the first place. Where the alleged conduct is not plausibly infringing, it necessarily cannot be plausibly willful.

Plaintiff's failure to cure this defect after amendment is dispositive. LHH's original motion to dismiss identified the absence of facts showing knowledge of infringement as fatal to the willfulness claim. Despite that notice, the FAC does not add any allegations explaining how LHH's staffing activity could infringe the '633 Patent, much less how LHH knowingly or recklessly engaged in such infringement. Repeating conclusory allegations of willfulness and referencing the same job postings does not satisfy the applicable pleading standards.

Accordingly, Plaintiff's willful infringement claim fails as a matter of law and should be dismissed. Because Plaintiff has already amended and still cannot plead facts showing knowledge of infringement or culpable conduct, dismissal should be with prejudice.

## 4.    PLAINTIFF'S INDUCEMENT INFRINGEMENT CLAIM STILL FAILS

Because Plaintiff has not plausibly alleged direct infringement, its claim for induced infringement necessarily fails. The FAC also fails to allege facts showing specific intent, affirmative acts of inducement, or identification of any direct infringer.

Plaintiff's inducement allegations fail as a matter of law because the FAC does not plead facts plausibly showing that LHH took affirmative steps to encourage infringement, sold any accused product, or acted with the specific intent required under 35 U.S.C. § 271(b). The Eastern District of Texas's decision in *Tierra Intelectual Borinquen, Inc. v. ASUS Computer Int'l, Inc.*, 2014 WL 894805 (E.D. Tex. Mar. 3, 2014), is directly on point and compels dismissal here.

In *Tierra Intelectual*, the plaintiff alleged induced infringement against a retailer, OfficeMax, based on the theory that OfficeMax sold an ASUS tablet that allegedly infringed the asserted patents when used by customers. 2014 WL 894805, at *1. The inducement theory rested on the existence of a user guide packaged with the product, which plaintiff claimed instructed users to perform infringing acts. *Id.* Although OfficeMax indisputably sold the accused product, Judge Gilstrap nonetheless dismissed the inducement claim because the complaint failed to allege that OfficeMax itself took affirmative steps to encourage infringement or otherwise acted with the required specific intent. Id. at *6–7.

Judge Gilstrap began by emphasizing that induced infringement is fundamentally different from direct infringement and requires more than knowledge or passive participation in the chain of commerce. *Id.* at *3–4. Because an alleged inducer does not itself perform all steps of the claimed invention, inducement liability substitutes specific intent to cause infringement for the missing acts. *Id.* at *3 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 764–66 (2011)). That intent must be shown through "affirmative steps to bring about the desired result" and "purposeful, culpable expression and conduct." *Id.* at *4–6 (quoting *Global-Tech and DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006)).

Applying those principles, the Court held that OfficeMax's alleged conduct of continuing to sell a product in the ordinary course of business, even with knowledge that the

manufacturer's user guide might induce infringement was legally insufficient to state a claim for inducement. *Id.* at *6. The Court made clear that "the failure to change behavior in light of a new fact cannot be characterized as an affirmative step evincing desire" that customers infringe. *Id*. Importantly, the Court rejected the notion that knowledge plus continued business activity could be repackaged as inducement, explaining that such "verbal acrobatics would defeat the purpose of the law's distinction between knowledge and intent." *Id.*

The reasoning of *Tierra Intelectual* applies with even greater force here. Unlike OfficeMax, LHH is not alleged to sell any product at all. The FAC asserts. without definition or factual support, that LHH was "selling Defendant's Exemplary Products to customers for use in end-user products." Dkt. 13, FAC ¶ 15. But the FAC never identifies what these supposed "Defendant Exemplary Products" are, never alleges that LHH develops, manufactures, licenses, or distributes any technology, and never explains how a staffing agency could be "selling" a product related to Kubernetes. This allegation is not merely conclusory; it is internally incoherent. LHH's business is talent placement, not product sales, and the FAC pleads no facts showing otherwise.

*Tierra Intelectual* makes clear that inducement liability cannot be based on vague characterizations of a defendant's role in commerce. There, even where the defendant indisputably sold a tangible accused product, the Court required allegations of affirmative inducement conduct such as advertising infringing features, instructing users how to infringe, or otherwise promoting infringing use. 2014 WL 894805, at *6–7. Here, Plaintiff alleges none of that. The FAC does not allege that LHH instructed anyone to use Kubernetes in an infringing manner, advertised infringing functionality, provided technical guidance, or even interacted with end users of any accused system. At most, Plaintiff alleges that LHH posted job descriptions on behalf of third-party clients. As a matter of law, that is not inducement.

Judge Gilstrap's discussion of neutral market participants is particularly instructive. The Court explained that inducement doctrine deliberately protects entities that are "indifferent to how their products are used after they have been sold," and that imposing liability on such actors would improperly chill commerce and force market participants to "hire patent lawyers just to sell products." *Id.* at *4–5. That policy concern applies here. If a retailer who actually sells an accused product cannot be liable absent affirmative inducement, then a staffing agency that merely posts job descriptions for third-party employers cannot plausibly be liable for inducement based on how those employers or their eventual hires use technology.

Moreover, *Tierra Intelectual* squarely forecloses Plaintiff's apparent attempt to rely on knowledge plus continued activity as a substitute for intent. The FAC suggests that LHH induced infringement by continuing its staffing activity after learning of the patent. But Judge Gilstrap expressly rejected that theory, holding that knowledge of alleged infringement without affirmative steps to encourage it does not satisfy § 271(b). *Id.* at *6–7. The FAC alleges no change in LHH's behavior, no targeted encouragement, and no conduct that could plausibly demonstrate the "purposeful, culpable expression and conduct" required for inducement. *Id.* at *4–6.

Finally, the absence of any defined "Defendant Exemplary Products" independently warrants dismissal. Inducement requires that a defendant induce acts of direct infringement using an identifiable instrumentality. *Id.* at *2–3. Where, as here, Plaintiff fails to identify any product sold by LHH, any system controlled by LHH, or any mechanism by which LHH could have induced infringement, the inducement claim collapses. *Tierra Intelectual* confirms that Rule 12(b)(6) exists precisely to prevent plaintiffs from proceeding to discovery on theories that rest on speculation, conclusory labels, and misunderstandings of a defendant's role in

the marketplace.

For all of these reasons, and under the reasoning of *Tierra Intelectual*, Plaintiff's inducement infringement claim should be dismissed.

## 5.    PLAINTIFF'S FAILURE TO CURE WARRANTS DISMISSAL WITH PREJUDICE

Plaintiff was given a clear roadmap of the deficiencies in its case through LHH's original motion to dismiss. The FAC demonstrates that Plaintiff cannot cure those defects. Rather than identifying an accused LHH system or alleging facts showing infringement, Plaintiff chose to expand rhetoric and exhibits while preserving the same legally deficient theory and making absolutely no substantive changes to its pleading. *See* Ex. 1.  Under these circumstances, dismissal is warranted. Given Plaintiff's failure to cure after notice, dismissal with prejudice is appropriate.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiff's First Amended Complaint for Patent Infringement against it pursuant to Rule 12(b)(6), and grant such further relief as the Court deems just and proper. Nothing herein should be construed as a waiver of Defendant's right to seek attorney's fees under 35 U.S.C. § 285 should Plaintiff continue to pursue objectively baseless claims

Respectfully submitted,

GORDON REES SCULLY MANSUKHANI, LLP

By: *Cristina Guerrero*
　　Cristina Guerrero
　　Texas Bar No. 24058860
　　1900 West Loop South, Suite 1000
　　Houston, TX 77027
　　cguerrero@grsm.com
　　713-228-7019

　　*Attorneys for Defendant*

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on Monday, January 26, 2026, a true and correct copy of the foregoing was filed with the court's ECF, which automatically sent a copy of same to all counsels of record.

/s/ *Cristina Guerrero*
Cristina Guerrero